UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Agnes Macua

    v.       Civil No. 22-cv-186-LM

Empire Beauty School,
Piconics, Inc., and
Linbar Property Management

REPORT AND RECOMMENDATION

    Pro se plaintiff Agnes Macua filed an amended complaint (Doc. No. 28) against defendants Empire Beauty School ("Empire"), Piconics, Inc., and Linbar Property Management.[1] Empire now moves to dismiss (Doc. No. 34) under Federal Rule of Civil Procedure 12(b)(6).[2]  Ms. Macua filed no objection.

    Empire's motion to dismiss is before the court for a recommendation as to disposition.  See Order, July 24, 2023. For reasons explained below, Ms. Macua fails to state a claim upon which relief can be granted as to Empire, and therefore, the court recommends that the district judge grant Empire's motion to dismiss.

---

[1] On December 14, 2022, the court issued an order (Doc. No. 25) granting defendants' motions to dismiss and directing Ms. Macua to file an amended complaint.

[2] Empire requested a hearing on its motion.  Upon review of Empire's briefing, the court determined that a hearing is unnecessary.  See LR 7.1(d) ("Except as otherwise provided, the court shall decide motions without oral argument.").

## **Applicable Legal Standard**

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

Because Ms. Macua is proceeding pro se, the court construes her amended complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations omitted) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). Pro se status, however, "does not insulate a party from complying with procedural and substantive law. Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts." Chiras v. Associated Credit Servs., Inc., No. 12-10871-TSH, 2012 WL 3025093, at *1 n.1 (D. Mass. July 23, 2012) (quoting Ahmed v.

Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (internal citation and quotation marks omitted)).

## Background

In September 2020, Ms. Macua enrolled as a student in Empire's two-year cosmetology course. Am. Compl. (Doc. No. 28, ¶¶ 15-16). According to Ms. Macua, Empire students and staff engaged in harassment and bullying directed at her. Id. ¶¶ 17-18. Ms. Macua provides no details regarding the subject matter of the alleged harassment and bullying or the conduct that she perceived to be harassment and bullying. On February 24, 2022, Ms. Macua complained to the Board of Cosmetology about the alleged harassment and bullying. Id. Then, on February 28, 2022, Ms. Macua claims that Empire students and staff, in addition to other individuals unaffiliated with Empire, "ambushed" her at her place of employment, and exposed her "private information via live streaming on Facebook as a form of public shaming to humiliate and embarrass her." Id. ¶ 20. Ms. Macua contends that Empire breached its implied promise to ensure student safety by failing to address Ms. Macua's complaints about bullying.

Ms. Macua asserts that these incidents forced her to drop out of Empire's cosmetology course prior to graduating. Id. ¶ 42. Ms. Macua seeks reinstatement to a cosmetology school,

transfer of her Empire credits, and reimbursement from Empire for her outstanding student loan balance of $22,000.00.

In support of her claims, Ms. Macua appended documents to her amended complaint, which appear to contain email and text messages with Empire staff and students. In these messages, Ms. Macua notifies Empire staff of "[h]igh school drama," requests times to make up classes, requests to be removed from a student group chat, and requests to have no further communication from Empire. See (Doc. No. 28-1, at 13-22). In response, Empire represents that it will look into the "drama," identifies times for make-up classes, and honors her requests for removal from the group chat and no further contact. Id.

## Discussion

Liberally construed, Ms. Macua's amended complaint asserts claims against Empire under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and state law claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, and false light invasion of privacy. Empire moves to dismiss Ms. Macua's amended complaint under Rule 12(b)(6) and argues that she fails to state any claim for relief against it.

### I.   Section 1983

Section 1983 provides a private cause of action "against any person who, while acting under color of state law, deprives another (or causes another to be deprived) of rights secured

4

either by the Constitution or by federal law." Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021) (citing 42 U.S.C. § 1983). Thus, an essential element of a section 1983 claim is that the defendant acts under the color of state law such that its actions are "fairly attributable to the State." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

Section 1983 does not provide a cause of action for purely private conduct that allegedly impacts a plaintiff's federal constitutional rights, and with certain exceptions, private actors generally cannot be held liable for violations of an individual's federal constitutional rights. See Georgia v. McCollum, 505 U.S. 42, 53 (1992) (citing Polk Cty. v. Dodson, 454 U.S. 312 (1981)); see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296-97 (2001) (collecting cases on various circumstances in which an ostensibly private actor has been treated as a state actor for purposes of section 1983). Although courts employ an individualized analysis, the First Circuit enumerated "three general ways in which a private party may become a state actor within the purview of section 1983." Cruz-Arce, 19 F.4th at 544.

5

> First, a private party may be considered a state actor
> if it assumes a public function which, by tradition,
> is exclusively reserved to the state (the public
> function test).  Second, a private party may be
> considered a state actor if its conduct is coerced or
> significantly encouraged by the state (the state
> compulsion test).  Third, a private party may be
> considered a state actor if it and the state have
> entered into so symbiotic a relationship that they
> have become joint participants in the challenged
> conduct (the nexus/joint action test).

Id. (internal citations omitted).  While a plaintiff is not required to specify which test applies, the allegations in the complaint "must comprise a factual predicate sufficient to render it plausible that one of these tests can be satisfied." Id.  "If the challenged conduct cannot be classified as state action, a section 1983 claim necessarily fails."  Id. at 543.

Empire argues that Ms. Macua fails to allege any basis for Empire, as a private entity, to be treated as a state actor.  The court agrees.  The allegations regarding Empire's alleged role in disseminating Ms. Macua's private information make no reference to any state actor or state action.  Am. Compl. (Doc. No. 28, ¶ 20).  Further, there are no allegations from which the court could infer that Empire should be considered a state actor.  For example, there are no allegations that Empire assumed a public function or engaged in joint action with the state.  The only reasonable inference to draw from Ms. Macua's allegations is that, to the extent Empire engaged in any conduct that would have violated her federal constitutional rights,

6

Empire acted in its capacity as a private entity.  Accordingly, where Empire engaged in purely private conduct, it is not a state actor, and therefore, it cannot be liable under section 1983.  For these reasons, Ms. Macua's section 1983 claim against Empire should be dismissed.

## II.   Section 1981

Section 1981 "affords relief when racial discrimination precludes a plaintiff from entering a contractual relationship or when racial discrimination impairs a plaintiff's existing contractual relationship." Alston v. Spiegel, 988 F.3d 564, 572 (1st Cir. 2021).  "To state a discrimination claim under section 1981, a plaintiff must show that [she] is a member of a racial minority, that the defendant discriminated against [her] on the basis of [her] race, and that the discrimination implicated the right to make and enforce contracts." Id.

As argued by Empire, Ms. Macua's amended complaint contains no allegations that Empire discriminated against her on the basis of her race.  In fact, aside from alleging that she is "a person of color" and a "citizen born in Africa," Am. Compl. (Doc. No. 28, ¶ 1), Ms. Macua makes no other reference to her race in connection with Empire's alleged conduct.  The amended complaint also contains no allegations of racial animus by Empire.  Accordingly, given the absence of allegations that

7

Empire discriminated against her on the basis of her race, Ms. Macua's section 1981 claim against Empire should be dismissed.

### III. Breach of Contract

To state a claim for breach of contract, a plaintiff "must allege sufficient facts to show (1) that a valid, binding contract existed between the parties, and (2) that defendant breached the terms of the contract." Estes v. ECMC Group, Inc., 565 F. Supp. 3d 289, 305 (D.N.H. 2020) (quotation and brackets omitted). "A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract." Id. (quoting Poland v. Twomey, 156 N.H. 412, 415, 937 A.2d 934 (2007)).

Under New Hampshire law, "the relationship between a student and his or her college is contractual in nature." Anderson v. Trs. of Dartmouth Coll., No. 19-cv-109-SM, 2020 WL 7129968, at *10 (D.N.H. Dec. 4, 2020) (citing Gamble v. Univ. Sys. of New Hampshire, 136 N.H. 9, 12-13, 610 A.2d 357 (1992)). "Courts have concluded that student handbooks and other materials may set out the terms of a contract between a university and its students." Doe v. Trs. of Dartmouth Coll., 615 F. Supp. 3d 47, 60 (D.N.H. 2022) (citing Nierenberg v. Trs. of Dartmouth Coll., No. 2152016CV00259, 2017 WL 10259668, at *2 (N.H. Super. Ct. July 7, 2017)).

8

"The proper interpretation of a contract is a question of law for the court, and the contract's proper meaning will be determined based on the meaning that would be attached to it by reasonable persons." Anderson, 2020 WL 7129968, at *10 (citing Gamble, 136 N.H. at 13). In the context of the relationship between a student and a postsecondary school, the court must "examine the language of the contract under the basic tenets of contract law" and also consider "the parties' unique relationship . . . ." Id. (citing Gamble, 136 N.H. at 13).

Here, Ms. Macua's amended complaint contains no allegations setting forth the terms of any contract between her and Empire. For example, there are no student handbook policies or other materials containing contract terms in connection with her enrollment as a student in Empire's cosmetology course. In fact, Ms. Macua does not allege that Empire violated the terms of any valid binding contract to which they were both parties. Rather, she claims that Empire breached an implied duty to ensure her safety as a student by not responding to unspecified reports of bullying.

Ms. Macua provides no authority for the proposition that New Hampshire law imposes an implied contractual duty on postsecondary schools to ensure the safety of their students. Further, given the lack of detail surrounding the substance of the alleged instances of bullying or harassment, the court could

9

not make findings as to whether such a duty is applicable to the circumstances of this case. Although New Hampshire courts have not addressed this precise issue, other courts have held that in the context of a school's enrollment contract with a student, there is no implied promise to provide a "safe learning environment." See Zelnick v. Morristown-Beard Sch., 137 A.3d 560, 567 (N.J. Super. Ct. 2015); Cf. Doe v. Trs. of Boston Coll., 892 F.3d 67, 94 (1st Cir. 2018) (holding, in the context of a negligence claim arising from defendant's alleged failure to conduct a disciplinary process with due care, that defendant "did not owe [plaintiffs] any additional independent duty outside of their existing contractual relationship."); Thomas v. Regents Univ. of Cal., 315 Cal. Rptr. 3d 623, 655 (Cal. App. 5th 2023) (holding, in the context of a negligence claim, that the university did not have a duty to protect its students from non-physical harm based on the facts of the case and the absence of any authority for the imposition of such a duty). Accordingly, as to her breach of contract claim, Ms. Macua fails to state a claim for relief against Empire.

**IV. Breach of the Implied Covenant of Good Faith and Fair Dealing**

In every agreement, "there is an implied covenant that the parties will act in good faith and fairly with one another." Anderson, 2020 WL 7129968, at *13 (quoting Skinny Pancake-

Hanover, LLC v. Crotix, 172 N.H. 372, 379, 214 A.3d 166 (2019)). This implied covenant includes a series of doctrines, which "fall into three categories: (1) contract formation; (2) termination of at-will employment; and (3) limitation of discretion in contractual performance." Id. (quoting Livingston v. 18 Mile Point Drive, 158 N.H. 619, 624 (2009)). Where Ms. Macua's allegations center solely on Empire's purported failure to ensure her safety, her claim could only fall within the "comparatively narrow" third category regarding performance. Livington, 158 N.H. at 624. The purpose of the third category is to "prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, as well as with common standards of decency, fairness, and reasonableness." Id. (internal citation omitted).

Given the absence of allegations concerning the terms of any contractual agreement between Empire and Ms. Macua, the court cannot discern any allegations of conduct by Empire that exceeds any agreed-upon common purpose or standards of decency, fairness, and reasonableness. Moreover, the breach alleged by Ms. Macua concerns an implied duty to ensure her safety, as opposed to allegations that Empire acted unreasonably in performing a specified contractual duty. In sum, Ms. Macua fails to state a claim for breach of the implied covenant of good faith and fair dealing against Empire.

## V. False Light Invasion of Privacy

To state a claim for false light invasion of privacy, a plaintiff must allege that: "(1) the defendant 'gives publicity to a matter concerning [the plaintiff] that places [the plaintiff] before the public in a false light,' (2) that false light 'would be highly offensive to a reasonable person,' and (3) the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" Lewis v. Abramson, No. 22-cv-126-PB, 2023 WL 3322009, at *7 (D.N.H. May 9, 2023) (quoting Restatement (Second) of Torts § 652 (1977)). An essential element of the claim is that "the matter published concerning the plaintiff is not true." Id. (quotation omitted).

Ms. Macua fails to allege that the private information purportedly publicized by any student or staff member of Empire was false. Rather, she only claims that Empire students and staff participated in disclosing her private information. Am. Compl. (Doc. No. 28, ¶¶ 2, 20). The absence of allegations regarding the falsity of the disclosed information is fatal to her claim. Accordingly, Ms. Macua fails to state a claim for false light invasion of privacy against Empire.

**Conclusion**

For the foregoing reasons, the district judge should grant Empire's motion to dismiss (Doc. No. 34) for failure to state a claim. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                _/s/ Andrea K. Johnstone_
                                                Andrea K. Johnstone
                                                United States Magistrate Judge

January 29, 2024

cc: Agnes Macua, pro se
     Counsel of Record